IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

UNITED STATES OF AMERICA,

       Plaintiff,

v.

$442,576.45 SEIZED FROM COMMERCIAL FEDERAL BANK ACCOUNTS; and

$7,200.00 IN U.S. CURRENCY,

       Defendants.

---

## VERIFIED COMPLAINT FOR FORFEITURE IN REM

---

The United States of America, by and through United States Attorney William J. Leone and Assistant United States Attorney James S. Russell, pursuant to Supplemental Rules for Admiralty and Maritime Claims C(2), files this Verified Complaint  and states:

### JURISDICTION AND VENUE

1.     The United States of America (the "United States") has commenced this action pursuant to the civil forfeiture provisions of 18 U.S.C. §981, seeking forfeiture of the defendant properties as involved in and as the proceeds of violations of 18 U.S.C. §1341 (mail fraud), §1343 (wire fraud), §1344 (bank fraud), and §1956 and §1957 (money laundering).   This Court has jurisdiction under 28 U.S.C. §§1345 and 1355.

2.     Venue is proper under 18 U.S.C. § 981(h), 19 U.S.C. §1605, and 28 U.S.C. §1395, as the defendant properties are located, and most of the acts described herein occurred, in the District of Colorado.

## DEFENDANT PROPERTY

3.      The defendant property is more fully described as:

a.  $442,576.45 seized pursuant to a Federal Seizure Warrant issued in District of Colorado Case Number 05-MC-00072, from Commercial Federal Bank, 953 Swede Gulch, Golden, Colorado accounts controlled by Shaun Rosiere, hereinafter defendant Bank Account Monies; and

b.  $7,200.00 seized pursuant to Federal Search Warrants issued in District of Colorado Case Numbers 05-5250M and 05-5255M from a safe located in the residence of Shaun Rosiere, 1969 Sinton Road, Evergreen, Colorado, hereinafter defendant Currency.

## FACTUAL BASIS FOR FORFEITURE

Except as otherwise noted, all of the following facts and information have been discovered through my own investigation and observations, and the observations and investigations of fellow law enforcement officers as reported to me.

4.      In January of 2005, the United States Postal Inspection Service became involved in an investigation of Shaun Rosiere, who was using several names and social security numbers fraudulently to obtain credit cards and who was fraudulently depositing unauthorized bank drafts into his bank accounts.

5.      On June 21, 2005, Postal Inspector Brandon Lewis went to Rosiere's home to interview him regarding the fraudulent credit cards.  Rosier indicated he had written numerous books and one of his books had sold 30,000 copies.  Rosiere claimed to have written a book titled, How to Repair Your Personal Credit.  Rosiere also claimed he had incorporated nearly

2

2,000 entities in Colorado and Nevada, utilizing Business Center Solutions, Inc. one of his newer

corporations.  He claimed to have a wide variety of businesses, including gold mining claims,

stock investments, incorporating businesses for others, and designing drugs.  Rosiere told the

inspector that he incorporates an entity, using his social security number to obtain an Employer

Identification Number, and obtaining a "Dunn Number" from Dunn and Bradstreet. Once all the

identifiers have been obtained, Rosiere writes a corporate resolution granting him authority to

open business bank accounts and to apply for lines of credit on behalf of the corporations.  He

then applies for credit at Office Depot, Staples, and Office Max.  He also told the inspector that

he also obtains lines of credit from Home Depot, Radio Shack, and Corporate Express.  He

pointed to two computers on his desk and told the inspector that he had recently purchased them

on one of his corporate accounts with Dell Computers.  He told the inspector that he has

approximately 50 credit cards stored in lockboxes at various local banks.

6.      Rosiere was shown a Lowe's Credit Application, in the name of Shaun Rosiere II

(2nd).  Rosiere claimed that his cousin had filed out the application and that he had not filled it

out.   He was shown a second Lowe's Credit Application in the name of Shaun Rosiere III (3rd),

and he claimed that too was his cousin.  He went on to claim that he had cousins named Shaun

Rosiere II (2nd) through Shaun Rosiere XXXV (35th).  Rosiere refused to schedule an

appointment to provide handwriting exemplars to be submitted for analysis and asked the

inspector to leave.  Rosiere told  the inspector that his property was officially declared to be an

independent nation, and that the inspector or any federal agents were not allowed on the property.

7.      On July 22, 2005, a Senior Fraud Investigator for Commercial Federal Bank

contacted the United States Postal Inspection Service regarding fraudulent drafts from Shaun

Rosiere that had been deposited into numerous bank accounts at Commercial Federal Bank.

8.      Analysis of the records of Commercial Federal Bank revealed that on or about May 18, 2005, Shaun Rosiere opened 44 corporate bank accounts at Commercial Federal Bank at 953 Swede Gulch, Evergreen, Colorado.  Rosiere registered all the entities with the Colorado Secretary of State on March 31, 2005 and April 1, 2005.  On May 18, 2005, Rosiere withdrew $4,400.00 from his Commercial Federal account in the name of Shaun Rosiere Mortgage Inc. and made $100 deposits into each of the 44 accounts.

9.      Commonly paper bank drafts are used to facilitate commercial business transactions and payments and are created when the payor authorizes a payee to draw an amount from the bank account of the payor.  The payor provides the payee with the necessary information, such as the bank name, routing number, account number, and name and address of the payor, and authorizes the payee to utilize a bank draft to draw funds from the bank account of the payor.  Once a payee obtains this authorization and the required information to create a draft the payee may print a paper draft payable to it.  Since the payee prints the draft, the draft does not contain the payor's signature like a regular paper check.  The signature  may have a stamp which reads:  "Your depositor has authorized this payment to payee.  Payee to hold you harmless for payment of this document.  This document shall be deposited only to credit of Payee.  Absence of endorsement is guaranteed by payee."   The payee, having been authorized by payor, deposits the draft into its bank, and the amount of the draft is credited to the account of the payee.  The bank of the payee then presents the draft to the bank of the payor.  The bank of the payor transfers the funds to the bank of the payee, while debiting its account of the payor.  Shaun Rosiere utilized this bank draft systems to perpetuate the fraud.

10.     Bank records revealed that beginning June 30, 2005 and ending July 5, 2005, Rosiere deposited 14,980 drafts, totaling $1,483,020.00, into 12 of his Commercial Federal Bank accounts.  Each draft was for $99.00.  All of the drafts had the following common characteristics: (1) printed on a light purple, perforated paper, (2) check number 1001, and (3) "Real Estate Riches" printed on the memo line.

11.     On July 6, 2005, Commercial Federal Bank Corporate Security placed a hold on all 44 of Rosier's business accounts because numerous drafts had been returned for non-sufficient funds, no account found, closed account, refer to maker, invalid routing number, and stolen.  In addition the bank received complaints from other banks, which included forgery affidavits from the customers detailing how the drafts, payable to one of Rosiere's companies, drawn on their bank accounts were not authorized.

12.     Commercial Federal Bank has determined that as of August 4, 2005 at least 8,126 items, totaling over $800,000 had been returned.

13.     Rosiere told the bank that he received the drafts as payments for books he was selling through a telemarketing company.  He claimed people ordered his book through a call center or over the internet.  Rosiere could not provide the name of his book nor could he describe how one could purchase his book on the internet.  Rosiere acknowledged that upwards of 30 percent of the drafts he deposited could be invalid and said he was willing to give the money back to the customers who did not order his book.  During another conversation Rosiere indicated to the bank that Palms Processing is the company he had contracted to sell his books and that they sent him the $99 drafts as a fee they owed him due to copyright laws.  He claimed that Palms Processing told him another 7 million in sales of his books were pending. Rosiere said

5

he believed that only 5,000 of the 15,000 drafts might be returned to Commercial Federal Bank for fraudulent reasons. During a third conversation Rosiere now claimed he no longer was doing business with Palms Processing, he no longer fully owned the 12 companies, and that he had signed a contract selling a percentage of the companies to Palms Processing. Rosier went on to say that Palms Processing would be contacting Commercial Federal to provide information on the accounts.

14.    A woman identifying herself as "Brigette Freyermuth" contacted Commercial Federal Bank and indicated that she was one of the owners of Palms Processing, a telemarketing company that has been in existence for over 15 years. "Freyermuth" said she had only talked with Rosiere by phone but her business partner, Robert knew and agreed to work with Rosiere. "Freyermuth" claimed she sent contracts to Rosiere for him to sign so Palms Processing could purchase the 12 business accounts at Commercial Federal Bank. She indicated that Palms Processing was selling book kits that contained a book about real estate riches, a book about ID theft, and a book about credit repair. She claims she received orders from a distributor and was unaware of who authored the books. She also indicated that Rosiere requested all drafts be sent to him from the printer. She would not provide her phone number and then claimed her cell phone was dying.

15.    Investigators contacted JKST Services, a printing company in Wisconsin. Their records revealed that on June 22, 2005, a customer filled out an order form on their website for drafts to be printed. The order was incomplete and JKST talked with "Brigette Freyermuth" regarding the online order. "Freyermuth" provided the missing information and faxed the form back to JKST to print approximately 15,000 drafts. "Freyermuth" also provided a list of 12

business names with their bank account information in which the drafts were to be deposited. "Freyermuth" directed JKST to FedEx the drafts to 1969 Sinton Road, Evergreen, Colorado, the residence of Rosiere.  JKST shipped the drafts but never received payment.  Federal Express records revealed that two of the packages were signed for by someone using the last name Rosiere.

16.     In furtherance of Rosiere's scheme to hide his fraud proceeds, Rosiere conducted numerous financial transactions.  On July 5, 2005, Rosiere withdrew $70,572.00 from five of his Commercial Federal Bank accounts and deposited the funds into his Commercial Federal Business Center Solutions account.  He then withdrew $66,045.00 from the Business Center Solutions account and wired $38,000 to a Washington Mutual Bank account held by his mother, $24,000 to a Wachovia Bank account in the name of Palms Processing, and $4,000 to a Suntrust Bank account in the name of John Hiley. This last wire was immediately returned to Commercial Federal Bank as Suntrust Bank could not locate the account number.  The next day, July 6, 2005 Rosiere withdrew $56,855 from four of his Commercial Federal Bank accounts and deposited the funds into his Business Center Solutions account.  That same day, Wachovia Bank returned the $24,000 wire Rosiere had completed to Palms Processing because of an invalid account number. Rosiere then withdrew $85,030 from his Business Center Solutions account and wired $72,000 to the same Wachovia Bank account for Palms Processing, $4,000 to the same Suntrust Bank account, and withdrew $9,000 in cash.

17.     The investigation by the United States Postal Inspection Service and the bank have revealed that the drafts Rosiere deposited into the Commercial Federal Bank accounts were fraudulent, and were not authorized by the makers whose names appeared thereon.  Rosiere

associates in Florida had created the drafts in numerous makers' names, drawn on the makers' accounts at the makers' banks, and had made the drafts payable to Rosiere controlled entities which he had established to perpetuate the fraud, all without the authorization of the true makers.

18.     On November 2, 2005, based on many of the same facts as stated herein, District of Colorado Magistrate Judge Craig B. Shaffer issued a search warrant in Case Number 05-5250M for Rosiere's residence, and on November 3, 2004 a civil seizure warrant in Case Number 05-MC-00072 for the Commercial Federal Bank Accounts, defendant Bank Account monies.  On November 7, 2005 law enforcement executed a Federal Search Warrant issued at the residence of Shaun Rosiere.  Agents found four stacks of undeposited drafts similar to the drafts Rosier used in his scheme; each draft was for $99.00 and payable to one of Rosier's companies. Agents also seized numerous Commercial Federal Bank statements to the various companies Rosiere used in his scheme.  Agents seized a locked safe from the residence.  Pursuant to executing a second search warrant in Case Number #05-5255M, agents opened the safe seized from Rosier's residence.  Some of the contents of the safe included defendant $7,2000 currency, 4 audio cassette tapes, and documents that bore the name Brigette Freyermuth.  The audio cassette tapes are recordings of Rosier's telephonic conversations with his accomplices and other individuals related to his scheme.  In addition agents also found heroin in the residence.  The United States incorporates herein by reference the two search warrants, seizure warrant, and supporting affidavits.

19.     In summary, Rosiere fraudulently set up numerous corporations with the Colorado Secretary of State for the sole purpose of obtaining corporate documents to give his corporations the appearance of legitimacy and validity.  Rosiere would then fraudulently create corporate

resolutions allowing him to obtain credit and open bank accounts in the name of the corporations. Using the corporate documents, Rosiere obtained credit from local merchants in the name of the corporations and purchased office products such as computers.  Using the corporate documents Rosiere opened 44 bank accounts at Commercial Federal Bank.  Once the bank accounts were opened Rosiere obtained the fraudulent 15,000 bank drafts he had created in numerous makers' names, drawn on the makers' accounts at the makers' banks, and  made payable to Rosiere controlled entities which he had established to perpetuate the fraud, all without the authorization of the true makers.  In such a fraudulent manner, Rosiere caused at least $1,483,020.00 of illegally obtained funds to be deposited into his accounts at Commercial Federal Bank.  In an attempt to conceal or disguise the nature and ownership of the illegal proceeds derived from his scheme, Rosiere withdrew funds, deposited funds into other accounts, and wire transferred  funds to accounts in the names of others.  In addition to depositing the money from the fraud scheme into his accounts Rosiere hid some of the fraud proceeds in a safe in his residence.  These funds, defendant Bank Account Monies and defendant Currency, have been seized pursuant to federal warrants.  As such the defendant Bank Account Monies seized from the Commercial Federal Bank accounts and defendant Currency seized from the safe constitute the proceeds of mail, wire, and bank fraud in violation of 18 U.S.C. §§§1341, 1343, 1344, and are involved in violations of 18 U.S.C. §§1956 and 1957, and therefore are subject to seizure and forfeiture pursuant to 18 U.S.C. §981, 18 U.S.C. §1956(c)(7), 18 U.S.C. §1961(1), and 28 U.S.C. §2461.

<u>VERIFICATION OF BRANDON LEWIS, UNITED STATES POSTAL INSPECTOR</u>

I, Postal Inspector Brandon Lewis, hereby state and aver that I have read the foregoing Factual Basis for Forfeiture and that the facts and information contained therein are true to the best of my knowledge and belief.

s/ Brandon Lewis_____
Brandon Lewis

STATE OF COLORADO            )
                             )ss
CITY AND COUNTY OF DENVER)

The foregoing was acknowledged before me this 20th day of December, 2005, by Brandon Lewis, United States Postal Inspection Service.

s/ Pamela S. Jebens_____
Notary Public

My Commission Expires: 2-2-2008

<u>FIRST CLAIM FOR RELIEF</u>

19.      The Plaintiff repeats and incorporates by reference the paragraphs above.

20.      By the foregoing and other acts, defendant Bank Accounts Monies are the proceeds of mail fraud in violation of 18 U.S.C. §1341, and therefore are forfeited to the United States under 18 U.S.C. §981(a)(1)(C), 18 U.S.C. §1956(c)(7), and 18 U.S.C. §1961(1).

10

SECOND CLAIM FOR RELIEF

21.     The Plaintiff repeats and incorporates by reference the paragraphs above.

22.     By the foregoing and other acts, defendant Bank Accounts Monies are the proceeds of wire fraud in violation of 18 U.S.C. §1343 and therefore are forfeited to the United States under 18 U.S.C. §981(a)(1)(C), 18 U.S.C. §1956(c)(7), and 18 U.S.C. §1961(1).

THIRD CLAIM FOR RELIEF

23.     The Plaintiff repeats and incorporates by reference the paragraphs above.

24.     By the foregoing and other acts, defendant Bank Accounts Monies are the proceeds of bank fraud in violation of 18 U.S.C. §1344 and therefore are forfeited to the United States under 18 U.S.C. §981(a)(1)(C).

FOURTH CLAIM FOR RELIEF

25.     The Plaintiff repeats and incorporates by reference the paragraphs above.

26.     By the foregoing and other acts, defendant Currency is the proceeds of mail fraud in violation of 18 U.S.C. §1341 and therefore is forfeited to the United States under 18 U.S.C. §981(a)(1)(C), 18 U.S.C. §1956(c)(7), and 18 U.S.C. §1961(1).

FIFTH CLAIM FOR RELIEF

27.     The Plaintiff repeats and incorporates by reference the paragraphs above.

28.     By the foregoing and other acts, defendant Currency is the proceeds of wire fraud in violation of 18 U.S.C. §1343 and therefore is forfeited to the United States under 18 U.S.C. §981(a)(1)(C), 18 U.S.C. §1956(c)(7), and 18 U.S.C. §1961(1).

SIXTH CLAIM FOR RELIEF

29.     The Plaintiff repeats and incorporates by reference the paragraphs above.

11

30.     By the foregoing and other acts, defendant Currency is the proceeds of bank fraud in violation of 18 U.S.C. § 1344 and therefore is forfeited to the United States under 18 U.S.C. §981(a)(1)(C).

## SEVENTH CLAIM FOR RELIEF

31.     The Plaintiff repeats and incorporates by references the paragraphs above.

32.     By the foregoing and other acts, defendant Bank Account Monies were involved in money laundering violations of 18 U.S.C. §1956, and  therefore are forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## EIGHT CLAIM FOR RELIEF

32.     The Plaintiff repeats and incorporates by references the paragraphs above.

33.     By the foregoing and other acts, defendant Bank Account Monies were involved in money laundering violations of 18 U.S.C. §1957, and  therefore are forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States prays for entry of a final order of forfeiture for the defendant property in favor of the United States, that the United States be authorized to dispose of the defendant property in accordance with law, and that the Court enter a finding of probable cause for the seizure of the defendant property and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. §2465.

Dated this 20th day of December, 2005.

Respectfully submitted

WILLIAM J. LEONE
United States Attorney

By:   s/ James S. Russell_____
James S. Russell
Assistant United States Attorney
1225 Seventeenth Street, Ste. 700
Denver, Colorado 80202
Telephone (303) 454-0100
FAX: (303) 454-0402
E-mail: James.Russell2@usdoj.gov
Attorney for Plaintiff